**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

---

GEREEMY ROLLER FARIAS COLORADO,

      Petitioner,

    v.                            Case No. 1:26-cv-01241 KWR-JHR

WARDEN, *Cibola County Correctional Center*,
MARY DE ANDA-YBARRA, *Field Office Director, El Paso,*
*U.S. Immigration and Customs Enforcement,*
TODD LYONS, *Acting Director,*
*Immigration and Customs Enforcement,*
TODD BLANCHE, *Acting U.S. Attorney General,*
DEPARTMENT OF HOMELAND SECURITY*,*
DAREN K. MARGOLIN, *Director of the Office of Executive Immigration Review,*
*and* MARKWAYNE MULLIN, *Secretary, U.S. Department*
*of Homeland Security*,

      Respondents.

**<u>ORDER GRANTING IN PART HABEAS PETITION</u>**

**THIS MATTER** comes before the Court on Petitioner's Petition for Writ of Habeas Corpus (Doc. 3). Petitioner is a noncitizen in ICE detention.  At issue is whether Petitioner should be granted a bond hearing under 8 U.S.C. § 1226(a), or whether he is mandatorily detained under 8 U.S.C. § 1225(b)(2)(A). As explained below, the Court concludes that Petitioner's detention is governed by the discretionary detention provision under § 1226(a) as he is not seeking admission into the United States, and he is entitled to a bond hearing. Having reviewed the parties' pleadings, briefing, and the relevant law, the Court finds that the Petition is well-taken and therefore is

**GRANTED in part.** The Court orders Respondents to hold an individualized bond hearing for Petitioner within **seven (7) days** of the entry of this order.

**BACKGROUND**

Petitioner is a citizen of Venezuela. Pet. ¶ 23, doc. 3. On or about August 27, 2022 he entered the United States without inspection. *Id.* ¶ 24. After entering the United States, he encountered immigration officials. *Id.* Petitioner has lived in Illinois since his entry into the country. Pet. ¶ 25. Petitioner's application for Temporary Protected Status was denied. *Id.* ¶ 26. Petitioner had two encounters with law enforcement involving alleged theft and drug possession. Pet. ¶ 28; Doc. 3-2 at 1.

On September 9, 2025 ICE arrested and detained Petitioner. Pet. ¶ 29. Petitioner obtained pro bono counsel and filed an application for Special Immigrant Juvenile status, as well as an application for asylum and withholding of removal with the immigration court. Pet. ¶ 33. On March 4, 2025, Petitioner filed a request for bond with the immigration court. Pet. ¶ 35. On March 11, the immigration judge denied Petitioner's request, reasoning as follows:

> Respondent entered the US without inspection in August 2022. Respondent is deemed an 'Applicant seeking admission' due to his manner of entry. Because of Respondent's manner of entry, this court lacks jurisdiction to issue a bond. Additionally, Respondent will be found to be a flight risk due to his speculative relief (SIJ/untimely Asylum Application), recent criminal history (Theft/Drug Possession), lack of US ties, and manner of entry.

*Id.* Respondents do not argue that he was ever paroled into the United States under 8 U.S.C. § 1182(d)(5)(A), or that his parole was ever revoked.

On September 5, 2025, the Board of Immigration Appeals issued a decision holding that immigration judges lack authority or jurisdiction to consider bond requests for any person who entered the United States without admission. *Matter of Yajure Hurtado,* 29 I & N Dec. 216 (BIA 2025) ("Immigration Judges lack authority to hear bond requests or to grant bond to aliens who

2

are present in the United States without admission."). In sum, it appears that Petitioner has remained in federal immigration custody without an opportunity to have a bond hearing because his detention has been classified as mandatory under 8 U.S.C. § 1225(b).

Respondents filed a response to the Petition in which they incorporated the arguments they raised in a prior case before the Court. *See* Resp., Doc. 7 at 2-4 (citing *Munoz Teran v. Bondi*, 2:25-cv-1218 KWR-SCY, 2026 WL 161527 (D.N.M. Jan. 21, 2026)). The Respondents' response in *Munoz Teran* did not raise administrative exhaustion or jurisdiction. Moreover, neither the response in this case nor the response in *Munoz Teran* asserted that the petitioner was an arriving alien or detained under 8 U.S.C. § 1225(b)(1). Respondents also do not assert that he was paroled into the United States under § 1182(d)(5)(A) and that his parole was revoked such that he was returned to mandatory detention under § 1225(b). Rather, here Respondents simply assert that Petitioner is detained under § 1225(b)(2)(A). Therefore, the Court declines to *sua sponte* raise administrative exhaustion or detention under § 1225(b)(1).

## LEGAL STANDARD

Petitioner seeks release from detention under a habeas statute, 28 U.S.C. § 2241. The Constitution guarantees that "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. art. I, § 9, cl. 2). A federal court may grant a writ of habeas corpus to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88).

## DISCUSSION

3

**I.**     **The discretionary detention provision under § 1226(a) applies to Petitioner, rather than the mandatory detention provision under § 1225(b)(2)(A).**

Petitioner is entitled to a bond hearing under § 1226(a) as he has been present in the United States for years and is not seeking admission into the United States. Mandatory detention under § 1225(b)(2)(A) only applies to noncitizens "seeking admission" into the United States. Despite this statutory language, Respondents argue that the mandatory detention provision under § 1225(b)(2)(A) applies here, as that provision covers not only those who present themselves at the border, but any noncitizen who is present in the United States without admission, pending a decision on removal. *See, e.g., Matter of Yajure Hurtado,* 29 I & N Dec. 216 (BIA 2025) ("Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission."). Here, Petitioner was detained while present in the United States. He lived in the United States for years prior to his detention. As the Court has repeatedly explained in prior opinions, which the Court adopts and incorporates herein, the statutory phrase "seeking admission" cannot be interpreted to apply to Petitioner, who has lived in the United States for years. *See Barry v. Lyons*, No. 1:26-CV-00504-KWR-KRS, 2026 WL 926218, at *2-5 (D.N.M. Apr. 6, 2026); *Abdikadir v. Mullin,* No. 1:26-CV-00634 KWR-JMR, 2026 WL 895661, at *2-6 (D.N.M. Apr. 1, 2026).[1] Therefore, Petitioner is entitled to a bond hearing under § 1226(a).

---

[1] The Second, Sixth, Seventh and Eleventh Circuits have rejected Respondents' interpretation. *See Cunha v. Freden*, No. 25-3141-PR, --- F.4th ---, 2026 WL 1146044, at *2 (2d Cir. Apr. 28, 2026); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, No. 25-14065, --- F.4th ---, 2026 WL 1243395 (11th Cir. May 6, 2026); *Lopez-Campos v. Raycraft,* --- F.4th ---, 2026 WL 1283891 (6th Cir. May 11, 2026). However, the Fifth and Eighth Circuits have agreed with Respondents. *Avila v. Bondi*, 170 F.4th 1128, 1134-38 (8th Cir. 2026) (agreeing with Respondents' interpretation); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 501-08 (5th Cir. 2026) (same).

Petitioner uses the word "paroled" in his Petition. Respondents do not argue that Petitioner was paroled into the United States under § 1182(d)(5)(A), state that his parole was revoked, or argue that upon the revocation of his parole he was returned to his custody status at the border. *See* Doc. 7. Rather, Respondents assert that this case is factually similar to *Munoz Teran,* in which the petitioner was *not* paroled into the country under § 1182(d)(5)(A) and lived in the United States for decades. *See Munoz Teran v. Bondi*, 2:25-cv-1218 KWR-SCY, 2026 WL 161527 (D.N.M. Jan. 21, 2026). Respondents assert that "[t]he facts presented in this matter are not materially distinguishable from the facts presented in *Munoz Teran* for the purposes of the Court's decision on the legal issue of which statutory provisions govern Petitioner's detention." Doc. 7 at 4. The Court declines to make arguments on Respondents' behalf, and therefore declines to *sua sponte* argue for Respondents that Petitioner was paroled into the United States under § 1182(d)(5)(A) and his parole was revoked such that he was returned to his status at the border. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that a court has no obligation to make arguments or perform research on behalf of litigants).

**II.      The Court finds that a bond hearing is an appropriate remedy.**

Petitioner asserts that he should be released or the Court should in the alternative order a bond hearing. As explained below, the Court orders a bond hearing. Petitioner did not carry his burden to show that the Court is required to release him rather than order a bond hearing. Moreover, he did not demonstrate that the Court should shift the burden at any bond hearing to the Respondents. As explained below, relying in part on the burden of proof and principles of party

5

presentation, the Court declines to immediately release Petitioner. Therefore, exercising its discretion under § 2241, the Court will order an individualized bond hearing.

Petitioner bears the burden of proof of showing that he is entitled to relief or a remedy. *See* 28 U.S.C. § 2241; *Odell v. Hudspeth*, 189 F.2d 300, 302 (10th Cir. 1951) (In § 2241 proceeding, "[t]he burden of proof was upon the petitioner to sustain these allegations."); *see also Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention [under § 2241] is on the petitioner."); *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) ("[I]t was error for the District Court to effectively impose on the Government the burden of proving that [petitioner] was *not* 'in custody in violation of the Constitution or laws or treaties of the United States' " under § 2241); *see also Smith v. Workman*, 550 F.3d 1258, 1273 (10th Cir. 2008) (noting that, in the context a *Brady* violation, the petitioner "bears the burden of showing that the prosecution suppressed material evidence favorable" to the petitioner); *McDonald v. Feeley*, 535 F. Supp. 3d 128, 135 (W.D.N.Y. 2021) (in § 2241 proceeding challenging his immigration detention, petitioner bears burden of proving by preponderance of evidence that he is detained contrary to law).

Section 1226(a) affords Respondents discretion to detain, release on bond, or parole a noncitizen. Notably, this section does not expressly provide a statutory right to immediate release. Generally, the release or bond decision by an immigration judge involves the weighing of evidence and is discretionary. § 1226(a); *Jennings,* 583 U.S. at 295. Discretionary bond decisions are generally not reviewable. 8 U.S.C. § 1226(e) ("The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."). "This provision precludes the Court from

reviewing the IJ's decision that denied bond because Petitioner was a flight risk." *Mwangi v. Terry*, 465 F. App'x 784, 786–87 (10th Cir. 2012) ("Therefore, to the extent Mr. Mwangi challenges the agency's discretionary bond decision, the magistrate judge was correct that the court lacked jurisdiction.") (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)); *Jennings,* 583 U.S. at 295 (explaining that § 1226(e) bars a challenge to a discretionary judgment or decision by the Attorney General regarding detention or release but does not preclude challenges to the statutory framework); *see also Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022) ("Although we lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision…").

To be sure, federal district courts have broad equitable power in ordering habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). A federal court is vested with "the largest power to control and direct the form of judgment to be entered in cases brought up before it on *habeas corpus.*" *Hilton v. Braunskill,* 481 U.S. 770, 775 (1987) (citation omitted). "Federal habeas corpus practice ... indicates that a court has broad discretion in conditioning a judgment granting habeas relief." *Id.* In issuing a writ of habeas corpus, a federal court has the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243; *see also Clayton v. Jones*, 700 F.3d 435, 443 (10th Cir. 2012) (noting that § 2243 gives district courts "broad discretion to craft appropriate habeas relief."). "Once a right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971). It is the "nature of the violation" that "determines the scope of the remedy." *Id.* at 16. Generally, the Court has authority to order release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

Here, the Court in its discretion would order a bond hearing, as an individualized bond hearing would provide Petitioner with the process he is due under the statute. *See* § 1226(a) (providing that the Attorney General *may* continue to detain a noncitizens pending a decision on removal or *may* release the noncitizen on bond or parole); *see Martinez Escobar v. Baltazar*, No. 26-CV-00296-NYW, 2026 WL 503313, at *4 (D. Colo. Feb. 24, 2026) (ordering bond hearing rather than immediate release where due process rights were violated by respondents' failure to apply § 1226(a) discretionary detention provisions); *Gutierrez v. Garcia*, No. 2:25-CV-001145-WJ-KRS, 2026 WL 310064, at *5 (D.N.M. Feb. 5, 2026) (noting that process due is an individualized bond hearing); *Velasquez Salazar v. Dedos*, No. 1:25-cv-835, 2025 WL 2676729, at *5 (D.N.M. Sep. 17, 2025) ("Because ... § 1226 governs Petitioner's detention, the due process owed to Petitioner is that provided for in § 1226—namely, an individualized bond hearing before an IJ."). Accordingly, the Court finds that the proper remedy is an individualized bond hearing pursuant to § 1226(a).

Petitioner also does not argue or demonstrate in his Petition that any due process or constitutional violation *requires* his release. He does not cite to any standard or law the Court should apply in deciding whether a due process violation requires his release. For example, should the Court apply the *Mathews* test in determining whether he should be immediately released, and if so, how does the *Mathews* test apply to the facts of this case to warrant his immediate release?[2] The Court therefore declines to *sua sponte* analyze whether his constitutional claim requires his release over a bond hearing, as this issue was not properly argued or presented to the Court. *See United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after

---

[2] Petitioner cites to the *Mathews* test, but states the test favors a bond hearing and does not assert or explain why he must be released. Pet. ¶ 40.

all, to make arguments for a litigant that he has not made for himself."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) (observing that a court has no obligation to make arguments or perform research on behalf of litigants) (quoting *Pelfresne v. Village of Williams Bay,* 917 F.2d 1017, 1023 (7th Cir.1990) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. [The court] will not do his research for him."). The principle of party presentation is particularly appropriate here, where this district court is overwhelmed with habeas petitions, and petitioners request that the Court rule immediately. If the Court were to act as Petitioner's counsel and make arguments or do research on his behalf, it would prejudice other petitioners by delaying a ruling on their petitions. Therefore, Petitioner has not properly placed before the Court the issue of whether he must be immediately released, or he has not carried his burden.

Finally, Petitioner does not argue or demonstrate that any due process violation in his case, such as the erroneous deprivation of a bond hearing, requires the Court to shift the burden at any subsequent bond hearing to Respondents.

**III.    <u>Petitioner did not demonstrate that the immigration court violated his due process rights by failing to shift the burden at the detention hearing to Respondents.</u>**

Petitioner asserts that the immigration court erred by placing the burden on Petitioner at his bond hearing. Pet. ¶¶ 87, 89, The Court disagrees. On or about March 11, 2026, the immigration judge held a bond hearing and issued an order denying bond, stating as follows:

> Respondent entered the US without inspection in August of 2022. Respondent is deemed an "Applicant seeking admission" due to his manner of entry. Because of Respondent's manner of entry, this court lacks jurisdiction to issue a bond. Additionally, the Respondent will be found to be a flight risk due to his speculative relief (SIJ/untimely Asylum Application), recent criminal history (Theft/Drug Possession), lack of US ties, and manner of entry.

Doc. 3-2 at 1. Thus, the immigration judge denied bond for lack of authority, but in the alternative concluded that Petitioner was a flight risk. Petitioner asserts that the immigration judge erred in this alternative ruling by placing the burden on Petitioner to show lack of flight risk or danger.

Notably, Petitioner cites to no circuit-level cases supporting his position. To be sure, the First and Second Circuits have held that detainees are entitled to a bond hearing where the government bears the burden after the detainment becomes prolonged. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 40 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842, 854 (2d Cir. 2020). On the other hand, the Third, Fourth, and Ninth Circuits have found that § 1226(a) does not entitle a detainee to a new bond hearing with a shifted burden after detention becomes prolonged. *See Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018); *Miranda v. Garland*, 34 F.4th 338, 366 (4th Cir. 2022); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1213–14 (9th Cir. 2022). Some of these circuits dealt with a burden-shifting requirement after the detainee had been detained under § 1226 for a prolonged period of time.

This court analyzed a similar issue in *Montero Cordova,* concluding that a petitioner was not entitled to burden-shifting at a bond hearing. The Court adopts and incorporates herein its reasoning in *Montero Cordova v. Noem*, No. 1:26-CV-00526-KWR-DLM, 2026 WL 867689, at *11-15 (D.N.M. Mar. 30, 2026) and denies Petitioner's request. As explained in *Montero Cordova,* the text of § 1226(a) does not place the burden on the Respondents to justify detention. *see Jennings*, 583 U.S. at 306 (noting that "[n]othing in § 1226's text ... supports the imposition" of "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary").

Moreover, Petitioner has not demonstrated that the *Mathews* factors warrant shifting the burden at any bond hearing to Respondents under the circumstances of this case. In determining

10

what process is due, the Court considers (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Under the first *Mathews* factor, Petitioner clearly has a strong interest in freedom from detention and receiving the procedures authorized by Congress (i.e., a bond hearing). *Montero Cordova v. Noem*, No. 1:26-CV-00526-KWR-DLM, 2026 WL 867689, at *13 (D.N.M. Mar. 30, 2026). But as explained in *Montero Cordova,* the procedures authorized by Congress do not include burden-shifting. *Id.* at *12.

The second *Mathews* factor considers the risk of erroneous deprivation under the procedures used and the probable value of additional safeguards. Petitioner fails to meaningfully analyze this factor. Petitioner largely asserts that the burden should be shifted here because detainees are often unable to obtain legal assistance, which hampers their ability to present evidence or make arguments while in detention. Pet. ¶ 67, Doc. 3. But here, Petitioner asserts he obtained pro bono counsel in his immigration case. *See* Pet. ¶ 33; Doc. 3-2 (immigration judge's order on detention hearing listing counsel's name and address). Petitioner does not argue or explain how his detention impeded his ability to make his case or resulted in an erroneous deprivation in *his* case. In fact, he does not argue erroneous deprivation in his hearing at all. *See* Pet. ¶ 67. A bond hearing under § 1226(a) is sufficient process to mitigate the risk of erroneous deprivation.[3]

---

[3] As explained above, the immigration judge concluded that he lacked authority to issue bond. In the alternative, he held a bond hearing under § 1226(a) and concluded that Petitioner is a flight risk. Here, Petitioner challenges the placement of the burden at that bond hearing.

*Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1209 (9th Cir. 2022). Therefore, he has failed to carry his burden.

Moreover, Petitioner fails to fully analyze the third *Mathews* factor. Petitioner asserts that placing the burden on the government imposes minimal cost or inconvenience. Pet. ¶ 67. But the final *Mathews* factor also considers the Government's significant interest in immigration proceedings as well as the fiscal and administrative burden that a burden-shifting requirement would entail. *See Miranda v. Garland*, 34 F.4th 338, 364 (4th Cir. 2022) (district court erred by failing to consider government's interest in immigration matters under third *Mathews* factor); *see also Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208-09 (9th Cir. 2022) (explaining the government's strong interest in immigration detention).

The Court will not overlook that "it must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature." *Landon v. Plasencia,* 459 U.S. 21, 34 (1982). "Over no conceivable subject is the legislative power of Congress more complete." *Reno v. Flores*, 507 U.S. 292, 305 (1993) (quotations and alterations omitted). Detention has been deemed a valid part of sovereign prerogative "necessary to give effect to the provisions for the exclusion or expulsion of aliens." *Wong Wing v. United States*, 163 U.S. 228, 235 (1896). The Supreme Court found that removal proceedings "would be vain if those accused could not be held in custody pending the inquiry into their true character, and while arrangements were being made for their deportation." *Id.* Although the fiscal and administrative burdens of a burden-shifting requirement would likely be minimal, the legislature's silence on a burden-shifting requirement indicates that any judicially imposed burden-shifting requirement here would be displacing a congressional policy choice that the burden remain with Petitioner. *See E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 52 (2025)

12

("Statutory silence is generally 'inconsistent with the view that Congress intended to require a special, heightened standard of proof.' " (quoting *Grogan v. Garner*, 498 U.S. 279, 286 (1991))). Thus, the significant weight afforded to the executive and legislature over immigration matters renders the third *Mathews* factor favorable to Respondents.

In sum, Petitioner has not argued or demonstrated a risk of erroneous deprivation in his case. Moreover, he did not account for the Respondents' substantial interest in detention pending removal proceedings. Considering the *Mathews* factors and Petitioner's arguments, the Court concludes that Petitioner has not demonstrated that he was entitled to burden-shifting at his bond hearing.

**IV.** **This opinion and the judgment should not be construed as addressing detention under § 1231, if that provision becomes applicable.**

The Petition presented the Court with a narrow issue, whether Petitioner's detention *pending a decision on removal* is governed by § 1225 or § 1226. Once an order of removal has become final, the authority governing a noncitizen's detention shifts to another statutory provision, 8 U.S.C. § 1231(a)(2). *See Johnson v. Arteaga-Martinez*, 596 U.S. 573, 574 (2022) ("After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day removal period, during which the Government "shall" detain the noncitizen.") (citing 8 U.S.C. §§ 1231(a)(1), (2)).

Section 1231 governs the detention of noncitizens "during" and "beyond" the "removal period." 8 U.S.C. § 1231(a)(2)–(6). In general, when a noncitizen is ordered removed, the Attorney General shall remove them within 90 days, known as the "removal period." § 1231(a)(1)(A). The "removal period" begins once a noncitizen's removal order "becomes administratively final," § 1231(a)(1)(B), meaning the order has been affirmed by the BIA or the time for seeking review has

13

expired, 8 U.S.C. § 1101(a)(47)(B). *Riley v. Bondi*, 606 U.S. 259, 267 (2025) ("An order of removal becomes final at the earlier of two points: (1) 'a determination by the [BIA] affirming such order,' or (2) 'the expiration of the period in which the alien is permitted to" petition the BIA for review of the order.') (citation omitted).  During the removal period, detention is mandatory. § 1231(a)(2).

Here, no party has asserted that § 1231 applies. Therefore, as of the entry of this order, it appears that the Court retains the ability to order the relief requested in the Petition, i.e., to determine whether §§ 1225 or 1226 applies to his detention pending a decision on removal. The Court's order and judgment should not be construed to opine on whether or when in the future Petitioner may be detained under § 1231.

## V.    The Court need not rule on Petitioner's remaining claims.

Because the Court grants habeas relief, the Court need not address his other claims or enter a declaration. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (finding it unnecessary to address an additional claim in a habeas petition after granting full relief on one claim because "any relief [petitioner] could obtain on that claim would be cumulative."); *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988) (stating that "[a] fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."); *Scott v. Mullin*, 303 F.3d 1222, 1224 (10th Cir. 2002) (declining to address the remaining claims in a habeas petition after already granting habeas relief on one claim). Although Petitioner asserts a due process claim based on his prolonged detention, as explained above he does not demonstrate that he is entitled to release over a bond hearing. Therefore, he has received all relief to which he is entitled.

14

Petitioner also asserts an APA claim asking the Court to enjoin Respondents from denying an immigration judge the ability to terminate or close the removal proceedings. He requests that the Court enjoin Respondents from "denying termination or continuances on the basis that Petitioner's priority date is not current on an approved SIJ status." Pet. at 27.  Petitioner appears to request that the Court intervene in pending removal proceedings, and does not request detention or custody relief based on his application for SIJ status. As explained above, habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws of the United States." § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas*, 533 U.S. at 687-88). Petitioner also has not demonstrated or argued that an APA claim not challenging custody or detention should be brought in a habeas action petition rather than a mandamus action. *See, e.g., Trump v. J.G.G.,* 604 U.S. 670, 672 (2025); *see also id*. at 674 (acknowledging distinction between habeas actions and APA claims). Therefore, he has not carried his burden.

Finally, in his APA claim Petitioner also appears to challenge his detention under 8 U.S.C. § 1225(b).  The Court has already granted Petitioner relief on this issue in his habeas petition. To the extent Petitioner challenges his detention through an APA claim, it fails. The APA provides a cause of action only where there is no other adequate remedy in court. 5 U.S.C. § 704. Challenges to the fact or duration of immigration detention are cognizable in habeas and "must be brought in habeas." *Trump v. J.G.G.*, 604 U.S. 670, 672 (2025). In a concurring opinion, Justice Kavanaugh explained that "claims under the APA are not available when there is another 'adequate remedy in a court,' ...." *Trump v. J.G.G.*, 604 U.S. at 674 (Kavanaugh, J., concurring). He further explained that "habeas corpus, not the APA, is the proper vehicle here." *Id.* Because the relief Petitioner

seeks, release from custody, is attainable through habeas corpus, the APA does not supply a cause of action here.

## CONCLUSION

The Court concludes that Petitioner's detention pending a decision on whether he should be removed from the United States is governed by § 1226(a) as opposed to § 1225(b)(2)(A). Accordingly, the Petition (Doc. 3) is granted in part. Respondents are directed to arrange an individualized bond hearing pursuant to § 1226(a) for Petitioner before an immigration judge within **seven (7) days** of the entry of this Order. **Respondents shall not deny Petitioner bond or parole on the basis that § 1225(b) requires mandatory detention.** However, the Court makes no determination whether or when in the future § 1231 applies to his detention, as it was not briefed or raised in the Petition. The parties are ordered to file a status report within **ten (10) days** of the entry of this order. The Court will enter a separate judgment.

**IT IS THEREFORE ORDERED** that Petitioner's Petition (Doc. 3) is hereby **GRANTED in part** for the reasons described in this Order.

**IT IS FURTHER ORDERED** that Respondents shall provide an individualized bond hearing before an immigration judge for Petitioner pursuant to § 1226(a), as opposed to § 1225(b), within **seven (7) days** of the entry of this order, provided that the Court makes no determination whether or when in the future § 1231 detention provisions may apply.

**IT IS FINALLY ORDERED** that the parties are directed to file a status report within **ten (10) days** of the entry of this order.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE

16